UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRADLEY JOSEPH PRUCHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00199-JRS-MJD |
| | ) | |
| T.J WATSON Warden, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Screening Complaint, Dismissing Insufficient Claims, and
Directing Service of Process**

Plaintiff Bradley Prucha is an inmate at United States Penitentiary-Terre Haute ("USP-TH"). Because Mr. Prucha is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint before service on the defendants.

### I. Screening Standard

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted).

## II. The Complaint

The complaint names thirty-nine defendants: (1) Warden T.J. Watson; (2) J.E. Krueger (former warden); (3) Kevin Wasson (counselor); (4) Todd Royer (unit manager); (5) J. Dodge (unit manager); (6) Marshall (unit manager); (7) Ruggeri (unit manager); (8) Jensen (counselor); (9) Schmalansee (case manager); (10) Klink (case manager); (11) Kimberly (trust fund supervisor); (12) Rupska (HSA); (13) McCoy (HSA); (14) Dr. William Wilson; (15) Dr. David Lukens; (16) Dr. Genevieve Muscatell; (17) B. Gourdouze (associate warden); (18) J.W. Cox (associate warden); (19) M. Underwood (associate warden); (20) J. Carmichaels (psychology clinical director); (21) M. Macke (psychology technician); (22) Sutter (chaplain); (23) R. Roloff (head chaplain); (24) P. Woolston (assistant supervisor of education); (25) J. Sherman (education specialist); (26) T. Setzer (teacher); (27) Lisa Mayfield (education secretary); (28) Wingerd (lieutenant); (29) B. Carson (SIS tech); (30) Jason Bradley (disciplinary hearing officer); (31) Bondurant (captain); (32) V. Smith (correctional officer); (33) C. Zepperele (correctional officer); (34) J. Kemp (correctional officer); (35) Sara Revell (Regional Director, Federal Bureau of Prisons ("BOP")); (36) Charles Samuel, Jr. (former BOP director); (37) Mark Inch (former BOP director); (38) Hugh Hurowitz (former BOP director); and (39) John Doe (current BOP director). Additionally, while not listing him as a defendant on pages 1–3 of his complaint, Mr. Prucha also clearly intended to include Warden T. Hunt as a defendant. *See* dkt. 1 at 11, ¶ 8. Mr. Prucha sues all defendants in their individual and official capacities. Mr. Prucha seeks compensatory and punitive damages and injunctive relief.

According to his complaint, Mr. Prucha has been hearing impaired since the age of ten. With the assistance of hearing aids, he can communicate effectively in one-on-one conversations, but, without hearing aids, communication is difficult as he is required to rely heavily on lip and facial movements. Mr. Prucha arrived at USP-TH on August 23, 2016. Mr. Prucha does not have hearing aids at USP-TH. He alleges that the defendants have failed to provide appropriate accommodations resulting in the following problems:

- Lack of ability to meaningfully participate in psychological, religious, and educational programs;
- Denial of equal access to entertainment;
- Denial of equal access to prison jobs;
- Lack of due process at a disciplinary proceeding;
- Missing alerts to go to the law library, recreation, the shower, and the cafeteria, the last of which caused him to miss approximately 30% of his meals and lose weight;
- Receiving a sunburn after being forced to stand outside in the yard as punishment for over an hour due to not hearing instructions;
- Loss of over $600 in personal property;
- Placing a spending limit on Mr. Prucha's trust account and putting his account on hold due to a misunderstanding about renewal of his contract;
- Retaliation and harassment by prison staff on account of his disabilities;
- Assault due to inability to hear staff warnings.

Mr. Prucha's claims are (1) discrimination based on disability in violation of § 504 of the Rehabilitation Act, (2) discrimination based on disability in violation of Title II of the Americans with Disability Act ("ADA"), (3) denial of due process in violation of the Fourteenth Amendment

in disciplinary proceedings; (4) denial of equal protection in violation of the Fourteenth Amendment; (5) deliberate indifference to his serious medical needs in violation of the Eighth Amendment; and (6) retaliation in violation of the First Amendment.

Mr. Prucha's complaint is 100 pages long. The Court will summarize Mr. Prucha's factual claims by category and include which defendants are alleged to be involved in each issue.

### a. Accommodations

Mr. Prucha alleges that he needs an inmate helper to alert him to relevant announcements. He has had inmate helpers at various times at USP-TH, but the monthly salary was reduced from $19.20/month to $5.25/month, making the job undesirable to many inmates. Mr. Prucha was able to recruit certain inmates to volunteer to help him, but some of the defendants interfered with the assignment. Mr. Prucha also alleges he should be placed in a cell close to announcements but at various times he was moved to a more distant cell. He alleges that another inmate received permission to move to one of the cells to be closer to a table and television that white inmates use. The following defendants were responsible for failing to place Mr. Prucha in an appropriately placed cell and for failing to assign Mr. Prucha with an inmate helper and/or interfering with his ability to have an appropriate helper: Warden Krueger, Dr. Lukens, Case Manager Klink, Counselor Wasson, Unit Manager Royer, Unit Manager Ruggeri, Unit Manager Marshall, Unit Manager Dodge, HSA Rupska, Warden T. Hunt, Case Manager Schmalansee.

Mr. Prucha requested an assistive listening device and also wanted a vibrating alarm clock so that he could wake up without the assistance of other inmates. Mr. Prucha first requested this alarm clock in 2016, but due to various setbacks did not receive it until July 2018. The following defendants were responsible for the delay in acquiring the alarm clock and assistive listening device: Warden Krueger, Counselor Wasson, M. Kimberly, Unit Manager Royer, Unit Manager

Dodge, Captain Bondurant, B. Gourdouze, J.W. Cox, M. Underwood, T. Hunt, HSA McCoy, and HSA Rupska.

### b. Discriminatory Policies

Mr. Prucha alleges that he is prevented from accessing the Administrative Remedy process because Warden Krueger initiated a policy on January 20, 2017, where inmates must initiate the grievance process by presenting their complaints verbally to their unit team.

### c. Educational, Religious, and Psychological Services

Education staff P. Woolston J. Sherman, T. Setzer, and Lisa Mayfield failed to provide Mr. Prucha with an assistive hearing device so Mr. Prucha could participate in educational programming. Chaplain R. Roloff and Chaplain Sutter likewise failed to provide accommodations so he could participate in religious services, and J. Carmichaels, and M. Mackle failed to provide accommodations so he could access psychological services.

### d. Confiscation of Property

Mr. Prucha alleges that on June 5, 2017, Warden Krueger retaliated against him for seeking accommodations by confiscating his property without providing proper forms and preventing Mr. Prucha's purchase of assistive devices because they had rechargeable batteries.

### e. Disciplinary Hearing

On July 17, 2017, Mr. Prucha received a conduct report for allowing another inmate to use his phone number. Mr. Prucha alleges that defendants Wasson, Royer, Wingerd, and Carson targeted him out of retaliation because other inmates commit this violation regularly without receiving write-ups. Mr. Prucha requested a hearing device to enable him to participate in the disciplinary hearing, but Disciplinary Hearing Officer Jason Bradley denied him any accommodation.

### f. Surgery and Ear Infection

On August 7, 2017, Mr. Prucha received surgery on his ear and subsequently developed an infection. Dr. Muscatell and Dr. Wilson's treatment for his infection was delayed, causing him pain. At a medical appointment in January 2018, Mr. Prucha learned that the ear that was operated on had been perforated. On January 31, 2018, Mr. Prucha refused to have his other ear operated on because he could not get the doctor to agree to order certain post-operative care plans to prevent another infection.

### g. Retaliation for Filing Grievances

Mr. Prucha alleges that Correctional Officer V. Smith retaliated against Mr. Prucha for filing grievances. On September 22, 2017, Smith told Mr. Prucha that if he continued to file grievances, he would tell other inmates that Mr. Prucha was a snitch and would also reveal the nature of his conviction (a sex offense).

### h. Harassment

Mr. Prucha alleges that beginning in June of 2018 Correctional Officer Kemp and Correctional Officer Zeperle harassed him because he was a sex offender and filed too many grievances, with some of the animus motivated by Officer Kemp's belief that Mr. Prucha thought he was better than others because of his hearing impairment. *See* dkt. 1 at 68. The officers conducted multiple searches on him and other inmates who associated with him.

### i. 2019 Assault

On January 22, 2019, Mr. Prucha was assaulted by inmate Ricardo Osuna while Officer Kemp watched. Mr. Prucha restrained Osuna's arms, but when Officer Kemp failed to intervene, Mr. Prucha shoved Osuna. Then Officer Kemp pepper sprayed Mr. Prucha and another officer restrained him on the ground. At that point, another inmate, Efrain Rubio-Rocha, ran down a flight

of stairs and kicked Mr. Prucha in the head, which severed part of his right ear. Mr. Prucha attributes the seriousness of the assault to the lack of BOP training in using warning lights or hand signals which would have alerted Mr. Prucha to get on the ground.

### j. Inadequate Training

Mr. Prucha believes the lack of training to follow ADA and RA guidelines caused his injuries. He believes Warden Krueger, current BOP director Michael Carvajal[1] and former BOP directors Hugh Hurowitz, Mark Inch, and Charles Samuels, Jr., and regional director Sara Revell are liable for failure to train the staff at USP-TH.

### III. Discussion of Claims

Mr. Prucha brings both statutory claims under the ADA and RA and constitutional claims. Mr. Prucha's constitutional claims are brought pursuant to the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers . . . ." *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005).

Mr. Prucha's ADA claims must be **dismissed** because the ADA does not apply to the federal government or federal agencies such as the BOP and its federal prisons. While the ADA prohibits a "public entity" from excluding disabled individuals from its programs or otherwise discriminating against them, "public entity" is defined, in pertinent part, as "any State or local government; . . . [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government [.]" 42 U.S.C. § 12131(1)(A), (B); *see also*

---

[1] Mr. Prucha listed the current BOP director as "John Doe," but the Court takes judicial notice that Michael Carvajal is the current director of the BOP. *See* Federal Bureau of Prisons, "About Our Agency," https://www.bop.gov/about/agency/leadership.jsp (last accessed October 20, 2020).

*Dyrek v. Garvey,* 334 F.3d 590, 597 n. 3 (7th Cir.2003) ("the ADA does not apply to federal agencies").

The Rehabilitation Act claims against the individual defendants in their individual capacities are **dismissed**. Individual employees are not amenable to suit under the Rehabilitation Act or the ADA. *See Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004*); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (collecting authority)). In addition, a claim against the individual defendants in their official capacities is really a claim against the BOP. See *Jaros*, 684 F.3d at fn.2. Accordingly, Rehabilitation Act claims against BOP Director Michael Carvajal and Warden T.J. Watson **shall proceed** in their official capacities. The Rehabilitation Act claims against the remaining defendants in their official capacities are **dismissed** as duplicative.

In an action bringing claims pursuant to *Bivens* and the RA, the Court applies the statute of limitations governing personal injury actions in the state where the incident took place. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000) (*Bivens*); *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 n. 5 (7th Cir. 2000) (Rehabilitation Act). In Indiana, the statute of limitations is two years. Ind. Code § 34-11-2-4. That two years begins to run "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *see also Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013) (federal law determines when limitations period begins to run). Mr. Prucha signed his complaint on April 8, 2020. The following claims are **dismissed** because they are barred by the statute of limitations:

- All claims against former Warden Krueger, as the factual allegations supporting those claims occurred in 2016 and 2017;

- Retaliation claim against defendants Wasson, Royer, Wingerd, and Carson related to the disciplinary hearing on July 17, 2017;

- Due process claim and failure to accommodate claim against Jason Bradley for failing to provide a listening aid at the disciplinary hearing in August 2017;

- Deliberate indifference claims against Dr. Wilson and Dr. Muscatell related to medical complications arising from his surgery in August 2017;

- Deliberate indifference claim against Dr. Lukens related to a 2016 request for accommodations;

- Deliberate indifference claim against J. Carmichaels and M. Macke for failure to provide accommodations when Mr. Prucha sought out psychological help in October 2016 and June 2017; and

- Retaliation claims against Correctional Officer Smith that occurred in September 2017.

The Court notes that the claims on the preceding list involve allegations that both began and ended before April 8, 2018. Some of Mr. Prucha's claims involve allegations that began prior to April 8, 2018, but continued after that date. Where there is a continuing harm, the statute of limitations period "begins when the course of illegal conduct is complete." *United States v. Spectrum Brands*, 924 F.3d 337, 350 (7th Cir. 2019).

The Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, meaning they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer

*v. Brennan*, 511 U.S. 825, 834 (1994). A prison official breaches this constitutional duty only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Mr. Prucha's Eighth Amendment deliberate indifference claims **shall proceed** against the following defendants in their individual capacities: (1) Case Manager Klink, (2) Counselor Wasson, (3) Unit Manager Royer, (4) Unit Manager Ruggeri, (5) Unit Manager Marshall, (6) Unit Manager Dodge, (7) HSA Rupska, (8) Warden T. Hunt, (9) M. Kimberly, (10) Captain Bondurant, (11) B. Gourdouze, (12) J.W. Cox, (13) M. Underwood, (14) HSA McCoy, (15) Officer Kemp, and (16) Case Manager Schmalansee. Any official capacity claims are dismissed because "federal prisoners suing under *Bivens* may sue relevant officials in their individual capacity only." *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005); *see also Yeadon v. Lappin*, 423 F. App'x 627, 629 (7th Cir. 2011) ("[U]nder *Bivens*, his suit can proceed against the officials in their individual capacities alone.").

All claims against Chaplain Sutter, Chaplain Roloff, Assistant Supervisor of Education P. Woolston, Education Specialist J. Sherman, teacher T. Setzer, and Education Secretary Lisa Mayfield are **dismissed** for failure to state a claim. As explained above, claims under the Rehabilitation Act cannot proceed against defendants in their individual capacities. Mr. Prucha's claims that he was denied access to educational and religious services due to his hearing impairment do not rise to an Eighth Amendment violation because such a denial does not cause excessive risk to inmate health or safety.

All claims against Sara Revell, Charles Samuel, March Inch, and Hugh Horowitz are **dismissed**. The complaint does not contain factual allegations showing that these BOP administrators were personally involved in the alleged constitutional deprivations to have

individual liability, *see Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017), or had sufficient knowledge of or responsibility for the alleged constitutional violations to be held liable as supervisory personnel, *see Haywood v. Hathaway*, 842 F.3d 1026, 1032–33 (7th Cir. 2016). And because Mr. Prucha's Rehabilitation Act claims are proceeding against Warden Watson and BOP Director Carvajal in their official capacities, any claims against the former BOP director or Ms. Revell would be duplicative.

Further, although Mr. Prucha includes "Jensen," a former counselor, as a defendant, he does not include any factual allegations against him or her in the complaint. Accordingly, any claim against Jensen is **dismissed**. *Colbert*, 851 F.3d at 657.

With respect to his retaliation claim, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). And "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abassi*, 137 S. Ct. 1843, 1857 (2017) (internal quotations omitted). Still, it would be error to dismiss Mr. Prucha's First Amendment retaliation claim at the screening stage because the question of whether *Bivens* provides a vehicle to litigate First Amendment claims is unsettled in the Seventh Circuit. *Haas v. Noordeloos*, No. 19-3473, --- F. App'x. ---, 2020 WL 591565, at *1 (7th Cir. Feb. 6, 2020). Mr. Prucha's retaliation claims against defendants Officers Kemp and Zepperele **shall proceed**.

Mr. Prucha also claims that the lack of accommodations denied him equal access to programs and entertainment in violation of the equal protection clause of the Fourteenth Amendment. First, because Mr. Prucha is a federal prisoner, his right to equal protection is derived from the Fifth Amendment rather than the Fourteenth Amendment, which applies to the states. To state a claim under the equal protection clause, Mr. Prucha must show that the defendants: (1) "treated him differently from others who were similarly situated, (2) intentionally treated him

differently because of his membership in the class to which he belonged (i.e., [hearing impaired] ), and (3) because [the hearing impaired] do not enjoy any heightened protection under the Constitution, . . . that the discriminatory intent was not rationally related to a legitimate state interest." *Schroeder v. Hamilton Sch. Dist.,* 282 F.3d 946, 950–51 (7th Cir.2002); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985). For the same reason the Court is permitting his First Amendment to proceed, Mr. Prucha's Fifth Amendment claim **shall proceed** against (1) Case Manager Klink, (2) Counselor Wasson, (3) Unit Manager Royer, (4) Unit Manager Ruggeri, (5) Unit Manager Marshall, (6) Unit Manager Dodge, (7) HSA Rupska, (8) Warden T. Hunt, (9) M. Kimberley, (10) Captain Bondurant, (11) B. Gourdouze, (12) J.W. Cox, (13) M. Underwood, (14) HSA McCoy, (15) Officer Kemp, (16) Case Manager Schmalansee.

This summary of claims includes all the viable claims identified by the Court. If Mr. Prucha believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through November 23, 2020**, in which to identify those claims.

### IV. Request for Preliminary Injunction within Complaint

On page 25 of Mr. Prucha's complaint, he requests that the Court issue preliminary injunctive relief ordering the defendants to provide Rehabilitation Act training for prison staff, appointing a Rehabilitation Act coordinator who is accessible by email, and providing specific accommodations for Mr. Prucha, including a listening device/sound amplifier, high decibel headphones, and sufficient funding to hire an inmate helper.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). "To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (internal

quotations omitted)). It must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id.* Only if the moving party meets these threshold requirements does the court then proceed to the balancing phase of the analysis. *Id.* In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id.*

Mr. Prucha's complaint simply does not provide enough information to allow the Court to determine whether any of the factors supporting injunctive relief have been met. If Mr. Prucha wishes to pursue a preliminary injunction against the defendants, he shall file a separate motion for preliminary injunction addressing the requirements discussed above.

### IV. Service of Process

The **clerk is directed to replace** "John Doe" with "Michael Carvajal, Director of the Bureau of Prisons." Further, although Mr. Prucha named many defendants on pages 2–3 of his complaint, only four defendants were listed in the caption on page 1. Accordingly, the **clerk is directed to add** the following defendants to the docket: (1) Case Manager Klink, (2) Unit Manager Ruggeri, (3) Unit Manager Marshall, (4) Unit Manager Dodge, (5) HSA Rupska, (6) Warden T. Hunt, (7) M. Kimberley, (8) Captain Bondurant, (9) B. Gourdouze, (10) J.W. Cox, (11) M. Underwood, (12) HSA McCoy, (13) Officer Kemp, (14) Case Manager Schmalansee, (15) Correctional Officer C. Zepperele, and (16) BOP Director Michael Carvajal. The Court notes that no claims are proceeding against the following defendants, who were named in the complaint but not listed on the docket: (1) Lt. Wingerd, (2) B. Carson, (3) Jason Bradley, (4) Dr. Wilson,

(5) Dr. Muscatell, (6) Dr. Lukens, (7) J. Carmichaels, (8) M. Macke, (9) V. Smith, (10) Sutter, (11) R. Roloff, (12) P. Woolston, (13) J. Sherman, (14) T. Setzer, (15) Lisa Mayfield, (16) Sara Revell, (17) Charles Samuel, Jr., (18) Mark Inch, (19) Hugh Horowitz, and (20) Jensen.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to **issue process** to defendants (1) Case Manager Klink, (2) Counselor Wasson, (3) Unit Manager Todd Royer, (4) Unit Manager Ruggeri, (5) Unit Manager Marshall, (6) Unit Manager Dodge, (7) HSA Rupska, (8) Warden T. Hunt, (9) M. Kimberley, (10) Captain Bondurant, (11) B. Gourdouze, (12) J.W. Cox, (13) M. Underwood, (14) HSA McCoy, (15) Officer Kemp, (16) Case Manager Schmalansee, (17) Correctional Officer C. Zepperele, (18) BOP Director Michael Carvajal, and (19) Warden T.J. Watson. The Marshal for this District or his Deputy shall serve the summons, together with a copy of the complaint, dkt. [1], exhibits, dkts. [1-1], [1-2], [1-3], signature page, dkt. [14], and a copy of this Order, at the expense of the United States.

The clerk **is directed to terminate** from the docket defendant J.E. Krueger.

**IT IS SO ORDERED.**

Date:   10/26/2020

_James R. Sweeney_
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRADLEY JOSEPH PRUCHA
15321-030
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

United States Marshal
Southern District of Indiana
46 East Ohio Street
179 U.S. Courthouse
Indianapolis, IN 46204