UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRADLEY JOSEPH PRUCHA,                )
                                      )
                    Plaintiff,        )
                                      )
            v.                        )          No. 2:20-cv-00199-JRS-MJD
                                      )
T.J WATSON Warden, et al.,            )
                                      )
                    Defendants.       )

**Order Granting in Part and Denying in Part Partial Motion for Summary Judgment for
Failure to Exhaust Administrative Remedies**

Plaintiff Bradley Prucha is a hearing-impaired inmate at United States Penitentiary-Terre

Haute ("USP-TH") who has brought this civil rights action under the Rehabilitation Act and the

theory of individual liability recognized in *Bivens v. Six Unknown Agent of the Federal Bureau

of Narcotics*, 403 U.S. 388 (1971).

The defendants have moved for partial summary judgment, arguing that Mr. Prucha

failed to exhaust several of his claims. Mr. Prucha filed a response, and the defendants in turn

withdrew their motion as to some of the claims. For the foregoing reasons, the motion for partial

summary judgment, dkt. [85], is **granted in part and denied in part** as to the remaining claims.

## I.      Procedural Background

Mr. Prucha filed a 100-page complaint in this case on April 13, 2020, naming 39

defendants. Dkt. 1. According to his complaint, Mr. Prucha has been hearing impaired since the

age of ten. With the assistance of hearing aids, he can communicate effectively in one-on-one

conversations, but, without hearing aids, communication is difficult as he is required to rely

heavily on lip and facial movements. Mr. Prucha has been incarcerated at USP-TH since August

23, 2016.

1

Relevant to this motion, he made seven different categories of allegations, all related in some way to his alleged hearing impairment:

- Inmate Helper – Mr. Prucha claimed that he requires an inmate helper to ensure he is aware of announcements, and that Defendants Klink, Wasson, Royer, Ruggeri, Marshall, Dodge, Rupska, Hunt, and Schmalansee either neglected to provide or affirmatively deprived him of such a helper;

- Alarm Clock – Mr. Prucha claimed that he required a vibrating alarm clock and that Defendants Wasson, Kimberley, Royer, Dodge, Bondurant, Gourdouze, Cox, Underwood, Hunt, McCoy, and Rupska were responsible for a lengthy delay in obtaining one;

- Assistive Listening Device – Mr. Prucha claimed that he required an assistive listening device and that Defendants Wasson, Kimberley, Royer, Dodge, Bondurant, Gourdouze, Cox, Underwood, Hunt, McCoy, and Rupska were responsible for his lack of one;

- Cell Location – Mr. Prucha claimed that he required a cell in close proximity to audio announcements, and that Defendants Klink, Wasson, Royer, Ruggeri, Marshall, Dodge, Rupska, Hunt, and Schmalansee failed to assign him to such a cell;

- Harassment – Mr. Prucha claimed that beginning in June 2018, Defendants Kemp and Zepperele harassed him by repeatedly searching him;

- Failure to Intervene – Mr. Prucha alleged that Defendant Kemp failed to intervene when other inmates assaulted him on January 22, 2019; and

- Inadequate Training – Mr. Prucha alleged that BOP officials failed to train staff to follow Americans with Disabilities Act and Rehabilitation Act guidelines.

*See* dkt. 15 at 4–7 (Screening Order).

The Court screened the Complaint on October 26, 2020 and allowed the following claims to proceed on the theory of individual liability recognized in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971):

- Eighth Amendment deliberate indifference claims:
  - Arising out of the Inmate Helper allegations, against Defendants Klink, Wasson, Royer, Ruggeri, Marshall, Dodge, Rupska, Hunt, and Schmalansee;
  - Arising out of the Alarm Clock allegations, against Defendants Wasson, Kimberley, Royer, Dodge, Bondurant, Gourdouze, Cox, Underwood, Hunt, McCoy, and Rupska;
  - Arising out of the Assistive Listening Device allegations, against Defendants Wasson, Kimberley, Royer, Dodge, Bondurant, Gourdouze, Cox, Underwood, Hunt, McCoy, and Rupska;
  - Arising out of the Cell Location allegations, against Defendants Klink, Wasson, Royer, Ruggeri, Marshall, Dodge, Rupska, Hunt, and Schmalansee; and
  - Arising out of the Failure to Intervene allegations, against Defendant Kemp.
- Fifth Amendment equal protection claims against Defendants Klink, Wasson, Royer, Ruggeri, Marshall, Dodge, Rupska, Hunt, Kimberley, Bondurant, Gourdouze, Cox, Underwood, McCoy, Kemp, and Schmalansee; and
- First Amendment retaliation claims against Defendants Kemp and Zepperele.

Dkt. 15 at 10–12. The Court also allowed claims arising out of all seven categories of allegations to proceed under the Rehabilitation Act against Bureau of Prisons ("BOP") Director Michael Carvajal and Warden T.J. Watson in their official capacities. *Id.* at 8. The Court dismissed all remaining claims. *Id.* at 12.

On November 29, 2021, the Court granted the defendants' motion to dismiss the First

Amendment retaliation claims and Fifth Amendment equal protection claims. Dkt. 97. Defendant Zepperele was dismissed as a defendant because the First Amendment retaliation claim was the only claim proceeding against him. *Id.* at 7.

The defendants moved for partial summary judgment for failure to exhaust administrative remedies on the following claims: (1) harassing searches, (2) failure to intervene in the January 2019 assault, (3) failure to train BOP employees to comply with federal disability discrimination laws, and (4) all claims under the Rehabilitation Act. Dkt. 85 at 1. Mr. Prucha opposed the motion, and based on his argument and evidence, the defendants withdrew their motion as to the Rehabilitation Act claims. Dkt. 91 at 1−2. Accordingly, they seek summary judgment for failure to exhaust the first three claims only.

## II.    Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## III.    Facts

Consistent with the legal standards set out above, the following facts are undisputed except where noted. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014).

### i. BOP Administrative Remedy Procedure

The BOP operates an administrative remedy program that allows inmates to "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). As a prisoner at USP-TH, Mr. Prucha was subject to the administrative remedy program. *See* 28 C.F.R. § 542.10(b) ("This Program applies to all inmates in institutions operated by the Bureau of Prisons . . . ."). The administrative remedy program is codified in the Code of Federal Regulations and in BOP Program Statement 1330.18 (Jan. 6, 2014) (avail. at https://www.bop.gov/policy/progstat/1330_018.pdf). When an inmate arrives at USP-TH, he participates in an orientation that includes an explanation of the administrative remedy process. Dkt. 85-1 at ¶ 4.

To exhaust his remedies, an inmate must typically begin by filing an informal remedy request through an appropriate institution staff member via a form BP-8. 28 C.F.R. § 542.13; P.S. 1330.18 at 4.

An inmate who is dissatisfied with the result of his attempt at informal resolution may proceed to file a formal Administrative Remedy Request "on the appropriate form (BP-9)" within 20 calendar days of the incident giving rise to the request. 28 C.F.R. § 542.14(a); P.S. 1330.18 at 4. If the inmate is dissatisfied with the Warden's response to his BP-9, he may appeal to the Regional Director by filing a form BP-10 "within 20 calendar days of the date the Warden signed the response" to the BP-9. 28 C.F.R. § 542.15(a); P.S. 1330.18 at 6–7. And if he is dissatisfied with the Regional Director's response to his BP-10, he may take the final step in the remedies process by filing a form BP-11 "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a); P.S. 1330.18 at 7. At every stage of the process, the inmate is required to use the appropriate form and "place a single complaint or

reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2); P.S. 1330.18 at 5.

If an inmate has filed administrative remedies at all required levels and received a substantive response from the General Counsel, the inmate is deemed to have exhausted the administrative remedies as to the specific issue, or issues, properly raised therein. *See* 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal.").

### ii. Mr. Prucha's Administrative Remedy History

All administrative remedy requests submitted by inmates are logged and tracked in the SENTRY computer database, which is an electronic record keeping system used by the BOP. Dkt. 85-1 at ¶ 5. A report of Mr. Prucha's administrative remedy requests from when he entered BOP custody on August 12, 2016, through the date his complaint was filed, April 13, 2020, was run in SENTRY on March 26, 2021. *Id.* at ¶ 10; dkt. 85-5 As of that date, Mr. Prucha had submitted a total of 70 administrative remedy requests, fully exhausting 12 of them. Dkt. 85-1 at ¶ 10.

Mr. Prucha exhausted claims arising out of the Inmate Helper, Alarm Clock, Assistive Listening Device, and Cell Location allegations: Request Nos. 907309, 928671, 933126, 933129, 934042, and 994435. Dkt. 85-1 at ¶¶ 11, 15, 18–20, 22. The other exhausted claims are unrelated to the claims in this lawsuit. *Id.* at ¶¶ 16−17, 21. None of the exhausted requests address Mr. Prucha's claims that Defendants Kemp and Zepperele harassed him by repeatedly searching him or that Defendant Kemp failed to intervene when other inmates assaulted Mr. Prucha on January 22, 2019. *Id.* at ¶ 23. The requests don't specifically state that BOP officials failed to train staff to follow federal disability law. *See* dkts. 85-6; 85-10; 85-13; 85-14; 85-15; and 85-17.

Mr. Prucha does not dispute that he failed to file a remedy request addressing those three issues. Rather, he argues that the administrative process was unavailable to him because he was effectively excluded from orientation due to the absence of any hearing assisting accommodations. Dkt. 88 at ¶ 3. He attested that he wore a paper sign on his shirt that said "Hearing Impaired," and upon arrival to the orientation pointed to the sign and asked a staff member for a listening device. Dkt. 92 at ¶ 2. The staff member shook his head, so Mr. Prucha was unable to hear everything at the orientation. *Id.* at ¶¶ 2, 5. Mr. Prucha said that because he missed out on certain things at the orientation, he "basically winged it" and did what he thought was appropriate to grieve his issues. *Id.* at ¶ 6.

Mr. Prucha further attested that he believed that Remedy # 907309 was a "catch-all remedy" that covered everything resulting from the lack of accommodations for his disability. *Id.* He submitted Remedy #907309 on June 25, 2017. Dkt. 85-6. In it, he alleged that due to his lack of a hearing aid he had been excluded from participating in prison programming including religious, psychological, and educational services or obtaining employment. *Id.* at 1. He observed that Defendants' Royer and Gourdouze's responses were "[n]ot appropriate for the ADA," and provided the example that when a hearing-impaired person goes to court or a movie theater, the ADA requires that he is provided an amplified listening device, not a referral to a doctor. *Id.*

Additionally, Remedy #934042 requested that a functional assessment "pursuant to 5200.05(9)(10) to determine if my post operation instruction/care are sufficient to avoid my exclusion from meals, events, counts, etc." be completed. Dkt. 85-15 at 1. This refers to BOP Program Statement, "Management of Inmates with Disabilities" which has the objective that "[s]taff will be provided training in order to work with inmates with disabilities." *See* U.S. Dep't

of Justice, Federal Bureau of Prisons Program Statement, Number 5200.05, Oct. 27, 2017, *available at* https://www.bop.gov/policy/progstat/5200_005.pdf.  Section 10 discusses how staff are to provide accommodations and program access. *Id.* at 8−9.

## IV. Discussion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

Because exhaustion of administrative remedies is an affirmative defense, the burden of proof is on the defendants to demonstrate that Mr. Prucha failed to exhaust all available administrative remedies before he filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). An administrative procedure is unavailable when (1) the process operates as a "simple dead end," (2) when it is so opaque that it is incapable of

use, or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Further, to satisfy the PLRA, a prisoner need only describe his concerns in enough detail to satisfy the requirements of the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). When those procedures—like the BOP's regulations—"provide little guidance regarding the required contents of a prison administrative complaint, . . . an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought.'" *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (quoting *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002); *see also Wilder v. Sutton*, 310 F. App'x 10, 15, 2009 WL 330531, *4 (7th Cir. 2009) ("prisoners must only put responsible persons on notice about the conditions about which they are complaining").

### i.    Harassment and Failure to Intervene Claims

Mr. Prucha alleges that he did not understand the complete requirements of the grievance process due to the lack of accommodations for his hearing disability at the inmate orientation. He further alleges that he believed his claims were covered by Remedy #907309 because all of his issues stem from the lack of accommodations. Again, this remedy request, filed in 2017, discussed the need for a hearing device so that Mr. Prucha could participate in prison programming. Dkt. 85-6.

First, Mr. Prucha's vague allegation that the administrative remedy process was unavailable to him is belied by his frequent use of it and successful exhaustion of twelve remedies. Mr. Prucha fails to explain how he could successfully navigate the administrative remedy process on one hand, and on the other hand how the process was unavailable to him due to not hearing everything at orientation. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019)

9

(upholding grant of summary judgment for failure to exhaust where inmate did not explain how being in segregation made the process unavailable to him when he continued to file grievances while in segregation).

Second, Mr. Prucha does not explain how Remedy #907309 could possibly alert prison officials to his claims regarding Officer Kemp's failure to intervene to protect him from other inmates during a physical fight in 2019, or Officer Kemp and Officer Zepperle's harassing searches of his dorm in retaliation of his frequent use of the grievance process.

The undisputed evidence shows that the grievance process was available to Mr. Prucha, and none of his grievances put the prison on notice of his concerns regarding these two claims. Accordingly, summary judgment is **granted** as to all claims related to harassing searches and Officer Kemp's failure to protect him during the 2019 assault.[1]

### ii.    Failure to Train Claims

Mr. Prucha's claims in this action concern how the lack of accommodations for his hearing disability have negatively affected his ability to participate in prison programming. That is "the nature of the wrong for which redress is sought.'" *Schillinger*, 954 F.3d at 995. Better training may be the means by which the defendants remedy that wrong, but the defendants have provided no authority—and the Court has located none—that suggest that prisoners are required to suggest the means of resolving the wrong within their grievances. Additionally, Mr. Prucha invoked the lack of employees' compliance with the ADA in Remedy #907309, dkt. 85-6 at 1, and requested that the prison comply with the BOP's Program Statement "Management of Inmates with Disabilities" in Remedy #934042. Thus, the prison was on notice that Mr. Prucha attributed his ongoing issues at least in part to staff's lack of familiarity with or adherence to federal disability

---

[1] The Court dismissed retaliation claims against Defendants Kemp and Zepperle, dkt. 97, and did not specifically construe Mr. Prucha's harassment claim as one under the Eighth Amendment, dkt. 15. Regardless, these claims are now dismissed.

law. To the extent that Mr. Prucha was even required to grieve the staff's lack of training, he has

done so. Accordingly, summary judgment is **denied** as to the failure to train claims.

## V. Conclusion

For the foregoing reasons, the defendants' motion for partial summary judgment

(exhaustion of administrative remedies), dkt. [85], is **granted in part and denied in part**.

Mr. Prucha's claims predicated on harassment and failure to intervene are **dismissed**. Because

these were the only ongoing claims against Defendant Kemp, the **clerk is directed** to terminate

him as a defendant from the docket. The motion is **denied** as to Mr. Prucha's failure to train

claims. The defendants were on notice of the issues Mr. Prucha complained of—lack of

accommodations—and the defendants cited no authority for the proposition that Mr. Prucha was

obligated to provide the solution to it—additional training—through the grievance process.

The claims proceeding are as follows: Eighth Amendment deliberate indifference claims

arising out of Mr. Prucha's Inmate Helper, Alarm Clock, Assistive Living Device, and Cell

Location allegations and his claims under the Rehabilitation Act (which encompass the failure-

to-train claim). A pretrial schedule order shall issue by separate order.

**IT IS SO ORDERED.**

Date:   12/13/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

11

Distribution:

BRADLEY JOSEPH PRUCHA
15321-030
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov